


FILED
ENTERED
LOGGED
RECEIVED

13-2981 SKG   -   13-2986 SKG

JAN 06 2013

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY
DEPUTY

This Affidavit is submitted in support of search warrants for fruits, instrumentalities and

evidence of violations of 18 U.S.C. § 1028A (Aggravated Identify Theft), 18 U.S.C. § 1029

(Access Device Fraud) and Theft), and 18 US.C. § 1344 (Bank Fraud) in the residences of **Oboh**

**OVIENRIAKHI** (hereinafter **"OVIENRIAKHI"**) and **Tariq Mosi HICKS** (hereinafter

**"HICKS"**), **PROMISE AUTO DEAL AND RENTAL**, and the vehicles operated by

**OVIENRIAKHI** and **HICKS** further described in Attachment A.

Your affiant, Douglas Rechtin, being duly sworn, states as follow:

1.     I am currently employed by the U. S. Department of Homeland Security, Homeland

Security Investigations (HSI)[1], as a Special Agent and have been so since October 2008.

2.     As part of my employment with HSI, I attended the Criminal Investigator Training

Program, which is a twelve week basic program for all Federal criminal investigators held at the

Federal Law Enforcement Training Center in Glynco, Georgia.  Additionally, I attended

Immigration & Customs Enforcement Special Agent Training, which is an additional eleven

weeks of training. During both of these courses, instruction was given on basic investigative

techniques; federal controlled substances laws; types of controlled substances; how controlled

substances are manufactured, transported across international borders, distributed, and sold;

money laundering techniques; and electronic and physical surveillance techniques.

---

[1] In 2010, Immigration & Customs Enforcement ("ICE") underwent a re-organization.
Several investigative components of the Department of Homeland Security were merged into one
investigative agency, called Homeland Security Investigations ("HSI").



3.     Your affiant is currently assigned to the Baltimore Seaport and Airport – High Intensity Drug Trafficking Area (HIDTA) Group, investigating unlawful acts and violations of federal customs law.  In the course of my current employment, I have participated in numerous federal and state narcotics investigations relating to drug trafficking, drug smuggling, and money laundering violations.  During the course of those investigations, I have been the affiant on numerous search warrants related to narcotics violations.  The information in this affidavit is based on my personal knowledge and information provided to me by other law enforcement officers.

## Introduction

4.     Based upon the investigation described below, and for reasons that will be set forth herein, your Affiant believes that there is sufficient probable cause to believe that **OVIENRIAKHI** and **HICKS**, and other co-conspirators have committed the following violations:  18 U.S.C. § 1028A (Aggravated Identify Theft), 18 U.S.C. § 1029 (Access Device Fraud, and 18 U.S.C. § 1344 (Bank Fraud), and that fruits, instrumentalities and other evidence of these crimes, further described in Attachment B, are present in or at:

   a.  208 North Monroe St., Baltimore, MD, 21223;
   b.  2731 Wilkins Ave., Baltimore, MD, 21223;
   c.  1901 W. Frederick Avenue, Baltimore, MD 21223;
   d.  9104 Marlove Oaks, Owings Mills, MD, 21117;
   e.  red Toyota Camry, Maryland license plate number 8BD9377;
   f.  a dark colored Mitsubishi Outlander, Maryland license plate number 5BA8206.

2

5.      Based on your Affiant's training, knowledge, and experience, and communications with

other law enforcement officers with specialized knowledge of financial investigations involving

fraudulent activities, you Affiant knows:

> a.   That those involved in identity theft, bank fraud, and/or
> fraudulent activities maintain records, receipts, notes, ledgers, airline
> tickets, money orders, and other papers relating to financial institution
> fraud.  That such records, receipts, notes, ledgers, etc., are maintained
> within their residences where they have ready access to them;

> b.   The terms "records", "documents", and "materials" include all
> of the items described in Attachment B in whatever form and by whatever
> means they have been created and/or stored.  This includes any handmade,
> photographic, mechanical, electrical, electronic, and/or magnetic forms.  It
> also includes items in the form of computer hardware, software,
> documentation, passwords, and/or data security devices;

> c.   That those involved in identity theft, bank fraud, and/or
> fraudulent activities maintain the records of fraudulent transactions as
> conventional business records, and as such, these records are maintained
> over an extended period of time, including time periods long after any
> particular transaction or financial transaction is completed;

> d.   That those involved in identity theft, bank fraud, and/or
> fraudulent activities secrete the proceeds of bank transactions, and records
> of fraudulent transactions in secure location within their residences,
> automobiles, businesses, and storage facilities for their ready access and to
> conceal them from law enforcement authorities;

> e.   That those involved in identity theft, bank fraud, and/or
> fraudulent activities conceal in their residences, automobiles, businesses
> and storage facilities, large amounts of currency, financial documents,
> precious metals, jewelry, electronic equipment and other items of value
> and/or proceeds of fraudulent activities, as well as evidence of financial
> transactions and receipts relating to obtaining, transferring, secreting, or
> the spending of large sums of money made from engaging in fraudulent
> activities;

> f.   That those involved in identity theft, bank fraud, and/or
> fraudulent activities often keep mail, receipts and other evidence of

purchases in their vehicles.  This is particularly true in the following situations:

    i.      The receipts are for automobile related expenses;

    ii.     Mail related to the fraud is received at more than one address;

    iii.    The subject is a student or works in a profession, both of which require commuting and potential to use a vehicle as a "mobile office" or study space.

    g.  That those involved in identity theft, bank fraud, and/or fraudulent activities commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses and/or telephone numbers of their associates in their organizations;

    h.  That those involved in identity theft, bank fraud, and/or fraudulent activities commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses and/or telephone numbers of their associates in their organizations;

    i.  That those involved in identity theft, bank fraud, and/or fraudulent activities commonly have close associates who assist within the group to forge signatures, assist with mailing, utilize their address for receipt of mail and utilize their addresses as return addresses, all as part of a scheme to disguise the true locations and participants involved;

    j.  That those involved in criminal conspiracies utilize vehicles to conduct meeting and to transport fruits or instrumentalities of those crimes to and from meetings with co-conspirators and to and from the commission of those crimes.  Evidence of those conspiracies and crimes are often left inside vehicles and/or are concealed in the trunk area of those vehicles.

## Probable Cause

6.    On November 18, 2013, in relation to an ongoing investigation of Oboh

**OVIENRIAKHI** (DOB: 01/05/1968),  the Honorable J. Frederick Motz, United States District

Judge, United States District Court for the District of Maryland, signed an Order Authorizing the

Interception of Wire Communications from telephone number (443) 570-3525 (hereinafter



referred to as **Target Telephone #3**). This phone is subscribed to **OVIENRIAKHI**, with an

account address of 208 N. Monroe St., Baltimore, MD. This Order was executed the same day.

7.       During this ongoing investigation, your Affiant determined that **OVIENRIAKHI** resides

at 208 N. Monroe St. and operates **Promise Auto Deal and Rental**, located at 1901 W.

Frederick Ave., Baltimore, MD. On October 12, 2013, **OVIENRIAKHI** was identified as a

passenger in a Honda Odyssey, bearing Maryland license plate number 2A19622, registered as a

dealer tag to **Promise Auto Deal and Rental**, 1901 Frederick Ave., Baltimore, MD. On

multiple occasions, those involved in the ongoing investigation were observed visiting **Promise**

**Auto Deal and Rental** for previously arranged meetings with **OVIENRIAKHI**.

8.       On or about November 18, 2013, interception of wire communications over **Target**

**Telephone #3** was initiated. Since interception began, it has become clear that **OVIENRIAKHI**

and his associates are involved in multiple criminal conspiracies, including Aggravated Identity

Theft, Access Device Fraud and Theft, and Bank Fraud involving fraudulent checks. Intercepted

communications have shown that **OVIENRIAKHI, HICKS**, and other individuals are involved

in a multi-state conspiracy to steal identities, manufacture and possess false identification,

possess and distribute stolen credit card information, manufacture and distribute fraudulent bank

checks, and defraud commercial and banking entities of goods and monies.

9.       Your Affiant believes, based on training, experience and intercepts, that

**OVIENRIAKHI, HICKS** and others are furthering these conspiracies through the following

schemes:

> a. Aggravated Identity Theft: conspirators are obtaining
> authentic credit reports through theft or fraud. The identities
> contained in these credit reports are then assumed through the

manufacture of fake identification using the conspirator's photo and biographic information and the victim's name and personal information. The conspirators then go to retail stores, including Wal-Mart, Best Buy, Target, etc., and open lines of credit in the victim's name. The conspirators use these lines of credit to purchase high value items after being approved.

a. Access Device Fraud (Credit Card Fraud): conspirators are obtaining credit card information through theft and/or fraud. Skimming machines are used to embed this credit card information into the magnetic strip of a gift card. Gift cards are used because the level of suspicious is not as high and security features, such as name, security code, billing zip code, do not exist. These gift cards are used at retail stores to make purchases in small amounts, i.e. fuel, food, clothing, additional gift cards, etc.

b. Bank Fraud: conspirators possess blank business and personal checks and the computer programs that are required to print these checks. Using a legitimate checking account number and routing number the conspirators are printing checks in a third party's name. These checks are deposited into the account of the third party and then withdrawn by the conspirator as cash.

### November 25, 2013

10.    At approximately 2:42 pm, **OVIENRIAKHI** received an incoming call from telephone number (443) 963-6436. This telephone number was later identified as being subscribed to Marlon Neal **THOMAS**, a/k/a Neal (DOB: 09/18/1971). During this call, **THOMAS** told **OVIENRIAKHI** that he was "… sending … the lady's information … can you make it for … thirty-five … four thousand ... know what I'm saying … what I'm telling the person is that my man works at insurance company … you gonna have to put the type of car it was … if you could make it today … grab that … it could be done tomorrow … grab that and do whatever …." **OVIENRIAKHI** replied "… it can happen …" *(Call C101).* Shortly after, at approximately 2:53 pm, **OVIENRIAKHI** received an incoming call from **THOMAS** during which **THOMAS**

instructed **OVIENRIAKHI** to "… make it seem like you the man at the place … you know what I mean …." **OVIENRIAKHI** replied that "… it gotta be a willing participant … somebody willing …." **THOMAS** told **OVIENRIAKHI** that "… the person is willing'…" *(Call C103).* Your Affiant believes, based on training and experience, that in the first call, **THOMAS** was referring to third party information he sent to **OVIENRIAKHI** in a text message. That information was to be used to manufacture a fraudulent check in the amount of $3500 or $4000. In the follow-up call, **THOMAS** and **OVIENRIAKHI** continued to conspire to produce a fake check and **OVIENRIAKHI** was making it clear that the third party must be a willing participant who will deposit the check in to their account.

11.    Your Affiant received from the Baltimore County Police Department (BCPD), a Miscellaneous Crime and Incident Report, dated 06/15/2013. **THOMAS** was listed as the complainant with associated telephone number (443) 963-6436.

12.    A search of the National Criminal Information Center (NCIC) for information related to **THOMAS** returned the following:

> **Marlon Neal THOMAS** (a/k/a Neal, Darryl **THOMAS**):
>
> | | |
> |---|---|
> | POB: | Maryland |
> | DOB: | 09/18/1971 |
> | Sex: | Male |
> | Height: | 5'06" |
> | Weight: | 138 lbs. |
>
> **Criminal History:**
> - 12/16/2011 – Baltimore County (Md) – Assault Second Degree (Guilty);
> - 06/04/1990 – Baltimore City  (Md)– Theft: Less $300, Plus Value (Guilty); Malicious Destruction of Property/Value Less than $300 (Guilty)

### November 26, 2013

13.    At approximately 1:03 pm, **OVIENRIAKHI** received an incoming call from telephone

number (443) 453-2400.  This telephone number was later identified as being subscribed to

Antoinette Regina **MOSES** (DOB: 5/10/1972).  During this telephone call, **OVIENRIAKHI**

told **MOSES** that he needed "... some paperwork done ...."  **MOSES** agreed and then directed

**OVIENRIAKHI** to her location *(Call C242)*.  At approximately 1:20 pm, **OVIENRIAKHI**

made an outgoing call to **MOSES** and informed her that he was at her building, which she

clarified as being Sutton Place *(Call C252)*.  **MOSES** then told **OVIENRIAKHI** "... I don't got

the business format ... I only got the personal ... I'm gonna need the CD to download ... I

thought, I can't even do it that way because it's personal ...."  Your Affiant believes, based on

training and experience, that in these calls **OVIENRIAKHI** and **MOSES** were conspiring to

manufacture a fake check for **THOMAS**, as referenced in calls C101 and C103.  **MOSES** and

**OVIENRIAKHI** discussed the computer program needed.

14.     Your Affiant reviewed a Baltimore City Police Department incident report for a fire call

listing Antoinette **MOSES** (DOB: 05/10/1972) as the user of telephone number (443) 453-2400.

15.     A search of the NCIC for information related to **MOSES** returned the following:

> **Antoinette Regina Rogers** (a/k/a Antoinette Regina **MOSES**,
> Antoinette Regina Steep, Antoinette Regina Johnson):
>
>       POB:        Maryland
>       DOB:        05/10/1972
>       Sex:        Female
>       Height:     5'06"
>       Weight:     140 lbs.
>       **Criminal History:**
> - 12/17/2009 – Harford County (Md) – Identity Theft (Nolle
>   Prosequi); Forgery (13 cts) (Nolle Prosequi); Counterfeit Order (2
>   cts)(Nolle Prosequi);  Theft Scheme: Less than $500 (Nolle
>   Prosequi); Theft Scheme: $500 Plus (Guilty);
> - 10/30/2007 – Rockville (Md) – CDS: Possession – Not Marijuana
>   (Guilty);

8

- 01/16/2003 – Anne Arundel County (Md) – Theft: Less than $500 Value (Guilty);
- 12/11/2002 – Baltimore County (Md) – Identity Theft (Nolle Prosequi); Identity Theft (Guilty); False Statement (3 cts)(Nolle Prosequi); Theft (2 cts)(Nolle Prosequi); Credit Card Offense (6 cts)(Nolle Prosequi); Credit Card Offense (Guilty);
- 01/17/1998 – Baltimore City (Md) – CDS: Possession with Intent to Manufacture, Distribute, or Dispense (Guilty);
- 08/18/1993 – Baltimore County (Md) – Theft (Probation Before Judgment).

16.    At approximately 1:24 pm, **OVIENRIAKHI** made an outgoing call to **THOMAS**. During this call **THOMAS** asked **OVIENRIAKHI** "… you did one already?" **OVIENRIAKHI** replied, "… no… the one I had … I took to 'shorty' … I still have to go get a program …" *(Call C253)*. Your Affiant believes, based on training and experience, that **THOMAS** was inquiring about the fake check and **OVIENRIAKHI** was referencing taking it to "shorty", who is believed to be **MOSES**. Your Affiant believes that **THOMAS** knows **MOSES** and that she is the one that manufactures checks.

17.    At approximately 1:58 pm, **OVIENRIAKHI** made an outgoing call to telephone number (347) 729-2686. The user of this telephone would later be identified as Tariq Mosi **HICKS** (DOB: 06/19/1969), based on voice recognition and content of call. During this conversation, **OVIENRIAKHI** and **HICKS** arranged to meet later that day at 3:00 or 3:30 pm. **HICKS** told **OVIENRIAKHI** that he's "… gotta bring that girl something … and she owe me money … I'm a get that money to you so you take care of that …." **OVIENRIAKHI** then said "… the other one we talked about … I don't know if you're ready because I'm ready on my side …" *(Call C280)*. Your Affiant believes, based on training and experience, that during this call, **HICKS** and **OVIENRIAKHI** spoke about two separate fraud schemes. Your Affiant believes, based on

subsequent intercepts, that these schemes involve identity theft and credit card fraud.

18.     At approximately 2:41 pm, **OVIENRIAKHI** made an outgoing call to **MOSES**.  During

this call, **OVIENRIAKHI** asked **MOSES**, "… do you have any passport photos … I'm gonna

need that one like ASAP … I'm supposed to meet him at 3:30 …" *(Call C306).*  Your Affiant

believes, based on training, experience, and subsequent intercepts, that **OVIENRIAKHI** was

arranging to get a passport size photograph from **MOSES** to take to the scheduled meeting with

**HICKS** at 3:30 PM.  It is believed that **HICKS** is manufacturing fake identifications or

passports that are used in conjunction with stolen or fraudulently obtained credit reports.

19.     At approximately 3:54 pm, **OVIENRIAKHI** received an incoming call from **THOMAS**.

During this call, **THOMAS** asked **OVIENRIAKHI** if he "… got the information I shot to you?"

**OVIENRIAKHI** confirmed that he got it and told **THOMAS** "… I need money to get the

program … the one I had was personal … [inaudible] need business …" *(Call C336).*  Your

Affiant believes, based on training and experience, that this call was in reference to the

manufacture of fake checks.  It is believed that **THOMAS** sent **OVIENRIAKHI**, via text

message, the third party information needed to manufacture checks.  **OVIENRIAKHI**

referenced the computer program **MOSES** needed to manufacture business checks, referenced in

call C252.

### November 27, 2013

20.     At approximately 12:29 pm, **OVIENRIAKHI** received an incoming call from **MOSES**

*(Call C450).*  During this call, **OVIENRIAKHI** told **MOSES** "… we can go out tomorrow …."

**MOSES** replied, "… not Thanksgiving … Friday … that would be the perfect time to do it …

first thing Friday … like 12:00 …."  Your Affiant believes, based on subsequent intercepts, that

10



**OVIENRIAKHI** and **MOSES** were making plans to go out shopping on Friday (November 29, 2013) to use the stolen credit cards and identities.

21.     At approximately 1:20 pm, **OVIENRIAKHI** received an incoming call from an unidentified male (UM7613) user of telephone number (443) 414-7613.  During this call, UM7613 asked **OVIENRIAKHI** "… name and address, right?"  **OVIENRIAKHI** confirmed and told UM7613 that they would meet later *(Call C641)*.  At approximately 1:26 pm, **OVIENRIAKHI** received an incoming call from UM7613 during which **OVIENRIAKHI** confirmed getting the name and address information *(Call C466)*.  Your Affiant believes, based on training and experience, that UM7613 was sending **OVIENRIAKHI**, via text message, the third party information needed to manufacture a fake check.

22.     At approximately 6:23 pm, **OVIENRIAKHI** received an incoming call from **MOSES** *(Call C561)*.  During this call, **MOSES** told **OVIENRIAKHI** that she "… got it …."  **OVIENRIAKHI** told **MOSES** that it would take a minute for him to get to her and the he was "… probably gonna need that … printer …."  **MOSES** asked **OVIENRIAKHI** if he "… got the CD and all that …."  **OVIENRIAKHI** answered "… I already got all those in here … I need that fake … ASAP …."  Your Affiant believes, based on subsequent intercepts and surveillance, that **MOSES** had the photograph that **OVIENRIAKHI** asked for and referred to as the 'fake', which was be given to **HICKS** for a fake identification or passport.  **OVIENRIAKHI** also confirmed to **MOSES** that he had gotten the CD containing the business format, referenced in *Calls C252* and *C253*.

23.     At approximately 7:53 pm, **OVIENRIAKHI** made an outgoing call to telephone number (443) 939-6692.  The user of this telephone number was identified by **OVIENRIAKHI** as

"Glenn" in *Call C175*. Your Affiant believes, based on knowledge, training, and experience,

that this is Glenn **RINALDI**, a longtime associate of **OVIENRIAKHI**. During this call,

**RINALDI** told **OVIENRIAKHI** "… I hate that … software … I had it yesterday … all except

that box …." **OVIENRIAKHI** then asked, "… where's the program?" **RINALDI** replied that

he "… left it there … the disc … over there where you left it …." **OVIENRIAKHI** asked if it

was "… inside the computer …" and **RINALDI** confirmed that it was *(Call C575)*. Your

Affiant believes, based on training and experience, that **RINALDI** had been using the business

format program, referenced in calls *C252*, *C253*, and *C561*, to make fake business checks, but

was having some difficulty with the program. At the end of the conversation, **OVIENRIAKHI**

was looking for the CD with the software and located it inside a computer. Cell tower data for

this call showed that **Target Telephone #3** was in the area of his office, located in **Promise**

**Auto Deal and Rental**, 1901 W. Frederick Ave., Baltimore, MD. At 7:57 pm, **MOSES** called

**OVIENRIAKHI** and asked if he was at the office, to which **OVIENRIAKHI** replied that he

was *(Call C579)*. Cell tower data for this call was the same as *call C575*.

24.     A search of the NCIC for information related to **RINALDI** returned the following:

### Glenn Brice RINALDI

|          |              |
|----------|--------------|
| POB:     | Maryland     |
| DOB:     | 01/29/1962   |
| Sex:     | Male         |
| Height:  | 5'10"        |
| Weight:  | 170 lbs.     |

**Criminal History:**
- 08/05/2011 – Baltimore County (MD) – Theft: $10,000 to under $100,000 (2 cts. Guilty);
- 6/10/2009 – Stafford County (VA) – Stolen Goods – Buy/Receive, Larceny > $200 (Guilty);



- 07/07/2008 – Pennsylvania State Police – Receiving Stolen Goods (Guilty);
- 03/03/2000 – Baltimore City (MD) – CDS: Possession, Marijuana (Probation before Judgment); Attempted – CDS: Possession, not Marijuana (Probation before Judgment)

25.     At approximately 8:50 pm, **HICKS** called **OVIENRIAKHI** and asked if he "… got the picture …." **OVIENRIAKHI** confirmed and said he was heading to "Reisterstown and Cold Spring …." **HICKS** told **OVIENRIAKHI** that he could "… meet … over there … there's a McDonald's *(Call 586)*. Your Affiant believes, based on intercepts and surveillance, that **OVIENRIAKHI** and **HICKS** were going to meet in order for **OVIENRIAKHI** to give **HICKS** the photograph of **MOSES** that would be used to manufacture fake identifications.

26.     At approximately 9:10 pm, your Affiant conducted surveillance on the parking lot of the McDonald's on the corner of Reisterstown Rd. and Cold Spring Ln., and observed **OVIENRIAKHI** sitting inside the driver's side of a red Camry, bearing Maryland license plate number 8BD9377. At approximately 9:29 pm, **HICKS** called **OVIENRIAKHI** and **OVIENRIAKHI** told **HICKS** "I see you" *(Call C598)*. Cell tower data for this call showed that **Target Telephone #3** was in the area of Reisterstown Rd. and Cold Sprint Ln. At the same time, your Affiant observed **OVIENRIAKHI** get out of the Camry and walk across the parking lot to a dark colored Mitsubishi SUV, later identified as bearing Maryland license plate number 5BA8206. **OVIENRIAKHI** was observed meeting with a black male. The Mitsubishi appeared to be occupied by a second unidentified black male. After meeting with **HICKS**, **OVIENRIAKHI** went back to the Camry and sat in it for a short period of time before departing the area.

27.     At approximately 9:32 pm, **OVIENRIAKHI** called **MOSES** and asked for her height

13

and weight. **MOSES** told **OVIENRIAKHI**, "… put 5'5 … put two hundred …" *(Call C600)*.

Your Affiant believes, based on training and experience, that **OVIENRIAKHI** met with **HICKS**

and was told to get **MOSES'** biographical and physical information for the fake identification.

**OVIENRIAKHI** then went back to his car and called **MOSES**. At approximately 9:33 pm,

**OVIENRIAKHI** passed **MOSES'** biographical information to **HICKS** *(Call C601)*.

28.     At approximately 10:27 pm, **HICKS** called **OVIENRIAKHI** and told him that he

couldn't "… get this to you 'til …earliest, Friday morning …" *(Call C607)*. Your Affiant

believes, based on training and experience, that **HICKS** needed two days to get the fake

identifications and credit reports ready and give them back to **OVIENRIAKHI**.

29.     On November 29, 2013, a subpoena was served on Avis Car Rental for information

related to the rental of the Outlander bearing Maryland registration number 5BA8206 for the

night of 11/27/2013. According to the Avis representative and the provided rental agreement,

that vehicle was rented on 11/9/13 at a Frederick, MD rental location by Brian Shannon (DOB:

X/X/1974), 7100 Stonehaven Dr., Waxhaw, NC, 26173. On December 11, 2013, your Affiant

received from the North Carolina Information and Analysis Center, a copy of the driver's license

photograph for Brian Shannon showing him as a white male. Your Affiant could find no ties

between Shannon and Maryland. Your Affiant believes, based on this information, that **HICKS**

produced and identification in the name of Shannon and rented the car in that name.

### November 28, 2013

30.     At approximately 11:07 am, **OVIENRIAKHI** called **MOSES**. **MOSES** told

**OVIENRIAKHI** "… to come get me … I'm just going to the shop … right?" **OVIENRIAKHI**

replied "… I'm coming down now …" *(Call C641)*. At approximately 11:16 am,

OVIENRIAKHI called MOSES and told her that he was there *(Call C643)*. Your Affiant

believes, based on intercepts, that OVIENRIAKHI picked MOSES up at her location to take

her back to Promise Auto Deal and Rental to work on manufacturing fake checks.

31.    At approximately 12:50 pm, OVIENRIAKHI received an incoming call from an

unidentified male (UM0835) using telephone number (443) 651-0835 *(Call C664)*. During this

call an unidentified female, believed to be MOSES based on voice comparison and calls *C641*

and *C643*, which put MOSES physically with OVIENRIAKHI, can be heard in the background

of Target Telephone #3 saying, "… [inaudible] … to make that 'cause he wouldn't know how

to put it … 'cause he put 'MP's' on the check but I can't put the 'MP's' on the check. The man

knows how to put the 'MP's' on the check even though that [inaudible] the other one …." Your

Affiant believes, based training, knowledge, experience, and intercepts, that MOSES could be

heard talking about the manufacture of fake business checks in the background as

OVIENRIAKHI was talking on Target Telephone #3 to UM0835. Your Affiant knows that

"MP" is an acronym for Micro Print, which is a common security feature on business and

personal checks. Your Affiant believes MOSES was using a computer located at Promise Auto

Deal and Rental to manufacture these checks based on three things:  1)  cell tower data for call

*C664* showed that Target Telephone #3 was stationary in the area of 1901 W. Frederick

Avenue; 2) at approximately 12:12 pm, OVIENRIAKHI told THOMAS that he was at "the

shop" *(Call C652)*; and 3) the previous night RINALDI informed OVIENRIAKHI, as

referenced in all *C575*, that he left the software in the computer, which was located at Promise

Auto Deal and Rental. Cell tower locational data for call *C575* showed that Target Telephone

#3 was located in the area of Promise Auto Deal and Rental, and was the same tower used in



call *C664*.

### November 29, 2013

32.   At approximately 11:01 am, **MOSES** called **OVIENRIAKHI** and said "… you at the

shop … I wanna start bringing this stuff down there so I could do the thing … all I have to do is

download that, but the paper is still a mess … if you want to use it you can, but I wouldn't … if I

could print the thing over there … I will just bring it down the shop …" *(Call C726)*.  Your

Affiant believes, based on training and experience, that **MOSES** is manufacturing fake checks at

**Promise Auto Deal and Rental**.

33.   At approximately 3:08 pm, OVIENRIAKH received an incoming call from **HICKS**,

using telephone number (301) 331-8695 *(Call C800)*.  **HICKS**, identified as the user of (301)

331-8695 through surveillance, voice comparison, subsequent intercepts, and content of

intercepts, said "… it's your man … my other phone died … I'm over there by Security right

now … by the mall … call me when you get there …."  Your Affiant believes, based on

surveillance and intercepts, that this meeting was set up by **HICKS** and **OVIENRIAKHI** so that

**HICKS** could supply **OVIENRIAKHI** with the fake identification and credit reports that they

had arranged for during their meeting on November 27, 2013.

34.   Shortly after, at approximately 3:14 PM, **OVIENRIAKHI** called **MOSES** and told her

that he was getting ready to meet "yo" around Security *(Call C804)*.  **MOSES** confirmed that

**OVIENRIAKHI** would come and get her afterward.  During this call, **MOSES** asked

**OVIENRIAKHI**, "… you want me to do the papers … for the personal … I just need to go get

it, take it to the office …."  Your Affiant believes, based on training and experience, that

**MOSES** was confirming with **OVIENRIAKHI** that she was going to manufacture personal

16

checks for him and that she would do it at **OVIENRIAKHI**'s office at **Promise Auto Deal and Rental**.

35.     At approximately 3:28 pm, **OVIENRIAKHI** called **HICKS** and informed him that he was "... where the IHOP used to be ..." *(Call C817)*.

36.     At approximately 3:35 pm, HSI Special Agents conducted surveillance at Security Square Mall, near the old IHOP restaurant and Bank of America ATM, on the north side of the mall. Agents observed **OVIENRIAKHI** sitting in the driver's seat of the red Toyota Camry.  At approximately 4:13 pm, a dark colored Mitsubishi Outlander, bearing Maryland license plate number 5BA8206, arrived at the parking lot and parked 2-3 parking spaces away from **OVIENRIAKHI**'s vehicle.  The driver, later identified as **HICKS**, got of the Outlander and got into the passenger's side of the Camry.  During the meeting, at least one juvenile was observed in the front passenger side of the Outlander.  At approximately 4:40 pm, the meeting concluded and **OVIENRIAKHI** departed the area.  Shortly after, **HICKS** departed the parking lot of the IHOP and drove to the northwest side of the Security Square Mall building where he remained for approximately five minutes before departing southbound on Rolling Road.  A traffic stop of the vehicle was conducted by BCPD marked unit #230.  During this stop, the driver was identified as Tariq Mosi **HICKS** (DOB: 6/19/1969), 9104 Marlove Oaks Ave., Owings Mills, MD, 21117, Maryland Operator's License Number H-200-785-609-470.  Three juveniles occupied the vehicle with **HICKS**.  At approximately 5:05 pm, surveillance was terminated.

37.     On December 10, 2013, the BCPD provided to your Affiant video surveillance footage of 9104 Marlove Oaks Ln., Owings Mills, MD.  On November 29, 2013, at approximately 1:45 pm, a black male was observed walking from 9104 Marlove Oaks Ln. and getting into the driver's

17

seat of a dark colored Mitsubishi SUV.  Several juveniles also got in to the vehicle.  That same day, at approximately 9:51 pm, the vehicle was observed returning to 9104 Marlove Oaks Ln. and parking in the street in front of the residence.  The juveniles and adult male driver were observed getting out of the vehicle and walking to the residence.

38.  A search of the NCIC for information related to **HICKS**, returned the following:

**Reginald Allison HICKS (a/k/a Tariq Mose HICKS):**

|  |  |
|---|---|
| POB: | District of Columbia |
| DOB: | 06/19/1969 |
| Sex: | Male |
| Height: | 5'09" |
| Weight: | 176 lbs. |

**Criminal History:**
- 10/1/2010 – Anne Arundel County (Md) – False Statement to Officer (Guilty);
- 7/1/2003 – US Secret Service – Bank Fraud, Supervised Release Violation (Guilty, 31.5 months/3 years supervised release);
- 5/19/2000 – Fairfax County (Va) – Obtaining Money by False Pretense (Guilty), Forging Coin and Bank Notes (6 cts)(Guilty)
- 3/10/1995 – US Secret Service – Felon in Possession of a Firearm, Credit Card Fraud (Guilty, 41 months/3 years supervised release);
- 2/19/1991 – Montgomery County (Md) – Sexual Offense/Fourth Degree (Guilty).

39.  At approximately 4:46 pm, **OVIENRIAKHI** made an outgoing call to **MOSES** and told her that he was "set" and asked for directions to pick her up *(Call C841)*.  At approximately 5:24 pm, **MOSES** called **OVIENRIAKHI** and gave him more directions *(Call C852)*.  Cell tower location data for call *C652* showed that **Target Telephone #3** was located near Brooklyn, MD.

40.  At approximately 7:46 pm, **OVIENRIAKHI** made an outgoing call to **MOSES** on telephone number (443) 570-2400, but the telephone was answered by an unidentified male (UM1).  **OVIENRIAKHI** asked UM1 where they were, and UM1 answered, "… by the iPads

and the MacBooks ... they runnin' everything ... putting the warranty on ... then we coming out ..." *(Call C866)*. At approximately 8:12 pm, **MOSES** called **OVIENRIAKHI** and said "he's at the car" *(Call C868)*. Cell tower locational data for call C866 and C868 showed that **Target Telephone #3** was in the area of the Martinsburg Mall, Martinsburg, WV. Your Affiant knows that there is a Wal-Mart at the Martinsburg Mall. Your Affiant believes, based on training, experience, and intercepts, that **HICKS** supplied **OVIENRIAKHI** during the meeting at Security Square Mall with fake identification cards and stolen credit cards. **OVIENRIAKHI** and **MOSES** traveled to Martinsburg, WV to use the credit cards and open credit lines to purchase computers and electronic goods at retail locations.

### November 30, 2013

41.   At approximately 9:10 am, **OVIENRIAKHI** called **MOSES** and arranged to pick her up. *(Call C900)*. At approximately 10:02 am, **MOSES** called **OVIENRIAKHI** and asked him "... you have the stuff there ... the ID and the card ... did I give it to you ... I'm looking for it ..." *(Call C904)*. At approximately 10:05 am, **OVIENRIAKHI** called **MOSES** and asked if she found it. **MOSES** replied, "... no ... make sure it's not in the car ... I know I left that checkbook in there ...." **OVIENRIAKHI** replied that "... it's not in here ... it's in the checkbook ... that's the ID you were going to show me ...." **MOSES** replied, "... the ID and the ... major credit card ..." *(Call C909)*. Your Affiant believes, based on training, experience, and intercepts, that **MOSES** and **OVIENRIAKHI** were talking about an ID and credit card that may have been misplaced in **OVIENRIAKHI**'s car during their trip the previous night to West Virginia. Your Affiant believes, that the ID, credit card, and checkbook are all instruments of these fraud schemes.

19

CGn
12·17·13

42.    At approximately 10:08 am, **HICKS** called **OVIENRIAKHI** *(Call C912)*.  During this call, **OVIENRIAKHI** and **HICKS** spoke at length and in detail about multiple schemes involving aggravated identity theft and stolen credit cards.  At the beginning, **OVIENRIAKHI** told **HICKS** that "... the company ... say it have ... another number ... Best Buy shut it down ... but Wal-Mart was able to give like 750 ... Best Buy ... approved for four but then they were askin' all those other question ... so we just left ...."  **HICKS** told **OVIENRIAKHI** that "... sometimes you can do your own research ... look on some of those websites ... sometimes you can get the number or you call  ... where that person's from ... like the ... 4-1-1 ... see if it's listed ... because I can only give you what come on that ...."  **OVIENRIAKHI** then said "... I was thinking about getting one more ... we went far yesterday ... we really couldn't do much ... I'll give you something ... for the difference ... so I can get one more ...."  **HICKS** replied, "... okay ... I'll ... see if I can ... put it together ... you said Wal-Mart works ...."  **OVIENRIAKHI** confirmed and said "... yes ... 750 ... after ... the first place ... didn't do it ... we just ... stop at Wal-Mart, and Wal-Mart ... didn't ask too many questions ...."  **HICKS** then said "... they always asks that maiden name ... ask that girl ... what ... did they ask her inside that place ...."  Your Affiant believes, based on training and experience, that **OVIENRIAKHI** and **HICKS** were talking about opening lines of credit at Best Buy and Wal-Mart by **OVIENRIAKHI** using the fake identification and credit report information supplied by **HICKS**.  **OVIENRIAKHI** explained that he was denied at Best Buy because he did not have a specific phone number that was associated with a credit report.  **HICKS** suggested that **OVIENRIAKHI** try to locate the telephone number for that person by doing internet research.  **OVIENRIAKHI** said that he did get $750 in credit at Wal-Mart.  **OVIENRIAKHI** then stated that he wanted one more and

20

offered **HICKS** an iPad for compensation.  **OVIENRIAKHI** discussed going far the previous

day, which was a reference to going to Martinsburg, WV.  **HICKS** and **OVIENRIAKHI** then

discussed Wal-Mart asking about maiden names.  Your Affiant knows that a mother's maiden

name is a common security practice used for credit checks.

The call continued and **HICKS** asked if "… those other things work for you?"

**OVIENRIAKHI** answered, "… the ones where it worked … I was able to buy … regular

clothes … I spend at least eight … it didn't work for Wal-Mart at all …."  **HICKS** added "…

never … but, you know, Macy's …."  **OVIENRIAKHI** added "… Gap … Polo didn't work …."

**HICKS** asked if **OVIENRIAKHI** went "… over the bridge to that one …" and

**OVIENRIAKHI** responded, "… no … we pass Hagerstown …."  **HICKS** said "… sometimes

like an experiment … go one place, try it … somebody told me … Arundel Mills … Timberland

shop …."  Your Affiant believes, based on training and experience, that during this part of the

call, **HICKS** was asking **OVIENRIAKHI** if the stolen credit cards he gave to him worked.  It is

believed that the credit cards worked sometimes, such as at clothing stores, like Macy's, Gap,

Timberland, but not at other stores.  When **HICKS** asked about the Polo shop "over the bridge"

he was asking if **OVIENRIAKHI** went to the Queenstown Outlets, across the Bay Bridge in

Queenstown, MD.  **OVIENRIAKHI**, talking about the day before, told **HICKS** that they went

past Hagerstown, which meant Martinsburg, WV.

At this point in the call, **OVIENRIAKHI** received an incoming call from **MOSES**.

**OVIENRIAKHI** put **HICKS** on hold and spoke to **MOSES**.  During this call, **OVIENRIAKHI**

told **MOSES** that he was talking to "yo" on the other line and they hung up.  **OVIENRIAKHI**

went back to talking to **HICKS** and said "… the girl … is a real thief … I'm with her 24/7 and

keep her close ... once they bring it, I tell her I need to see the approval ... as we left here yesterday to drop her off ... I collected all of it from her ...." **HICKS** then said to **OVIENRIAKHI**, "... you have to try ... HH Gregg ...." **OVIENRIAKHI** responded "... we wanna go there later ... it is there we want to start this morning ...." **HICKS** also suggested going to "Costco ... they give you like 10k, easy ...." Your Affiant believes, based on intercepts, that in this part of the call, **OVIENRIAKHI** and **HICKS** were talking about **MOSES** and that **OVIENRIAKHI** did not trust her to hold anything that they buy because she would steal it. **HICKS** believed HH Gregg and Costco were also easy targets for opening fraudulent lines of credit.

43.     At approximately 11:06 am, **HICKS** called **OVIENRIAKHI** *(Call C923)*. During this call, **HICKS** called **OVIENRIAKHI** and asked him "... you want ... one or two ... I can ... give you two ... you could give me that pay ... whatever ... I don't like this ... every day it's one ... one ...." **OVIENRIAKHI** agreed and told **HICKS** "... we will do two ...." Your Affiant believes, based on training and experience, that **HICKS** and **OVIENRIAKHI** were dealing in multiple stolen credit reports and the fake identifications that go along with them, and **HICKS** would rather give **OVIENRIAKHI** two at the same time than meeting him every day to do one.

44.     At approximately 12:36 pm, **MOSES** called **OVIENRIAKHI** and told him that "... it's not going to work because I forgot the American Express ... they use the last four of the numbers ... I'm getting ready to come out ..." *(Call C939)*. Your Affiant knows that at some stores, the last four digits of a credit card are required to be entered at check-out as a security feature. Your Affiant believes, based on training and experience, that stolen credit card information is often

Cfc
12·17·13

embedded on to the magnetic strip of a different credit card or gift card.  In this case, **MOSES**

recognized she could not use her card at the store she was at because the number on the front

would not match the credit card number embedded on to the magnetic strip.  At approximately

1:18 pm, **OVIENRIAKHI** called **MOSES** and asked where she was *(Call C949)*.  She replied

that she was "… at the customer service desk …." Cell tower locational data for calls *C939* and

*C949* showed that **Target Telephone #3** was located in Leesburg, VA, near the Leesburg Corner

Premium Outlets.

45.    At approximately 8:33 pm, **OVIENRIAKHI** made an outgoing call to **THOMAS** *(Call

C1032)*.  During this call, **OVIENRIAKHI** told **THOMAS** that "… somebody have an iPad

Mini for 250 and the … regular kind … for 300 …." **THOMAS** replied, "… somebody got 400

for both of them …." Your Affiant believes, through intercepts, that the iPads were bought using

a credit card or identity theft scheme in Leesburg, VA.

### December 1, 2013

46.    At approximately 2:22 pm, **OVIENRIAKHI** called **THOMAS** *(Call C1095)*.  During

this call, **OVIENRIAKHI** told **THOMAS** about "… that thing … that fat boy used to get … I

got four … go at that place … Macy's and a couple other places …." After this, **THOMAS**

suggested **OVIENRIAKHI** talk to him in person at Moe's on President Street.  Your Affiant

believes, based on training and experience, that **OVIENRIAKHI** had a credit card scheme that

he wanted to bring **THOMAS** in to.  At approximately 2:32 PM, **OVIENRIAKHI** called

**THOMAS** *(Call C1096)*.  During this call, **THOMAS** told **OVIENRIAKHI** that he just saw

**OVIENRIAKHI** drive by Moe's.  At approximately the same time, your Affiant observed

**OVIENRIAKHI**, driving the red Toyota Camry, pull up to the curb across Stiles St. from the

front door of Moe's.  At approximately 2:40 PM, **OVIENRIAKHI** called **THOMAS** and told

him to go to the BP gas station on 25th and put $25 in his tank because "... they already took

credit up there ..." *(Call C1099)*.  Your Affiant believes that **OVIENRIAKHI** met **THOMAS** at

the Moe's and gave him some stolen credit cards and was calling to let **THOMAS** know the BP

on 25th is a spot that will accept the card.

47.     At approximately 4:24 pm, **OVIENRIAKHI** made an outgoing call to Kofi LNU (last

name unknown), who was using telephone number (443) 415-9907 *(Call C1120)*.  During this

call, Kofi LNU told **OVIENRIAKHI** that he was "... going to use this thing ... Wal-Mart ...."

At approximately 5:02 pm, Kofi LNU called **OVIENRIAKHI** and asked if he should use

"credit", to which **OVIENRIAKHI** confirmed *(Call C1129)*.  At approximately 5:25 pm, Kofi

LNU called **OVIENRIAKHI** and told him that he went to Macy's and "... it didn't go ... none

of them ..." *(Call C1143)*.  **OVIENRIAKHI** told Kofi LNU, "... not to buy above 200 ... 175

... things like that ... if he tells you to call the bank, just tell him never mind ... try Victoria's

Secret, spend ... 100 ...."  At approximately 6:04 pm, Kofi LNU called **OVIENRIAKHI** and

told him that he tried and it didn't work *(Call C1147)*.  Your Affiant believes, based on training

and experience, that **OVIENRIAKHI** had enlisted the help of Kofi LNU to use the stolen credit

cards.

48.     Your Affiant believes, based on the totality of the intercepts on November 29, 2013,

November 30, 2013, and December 1, 2013, and the corresponding cell tower locational date for

**Target Telephone #3**, that **OVIENRIAKHI** and **MOSES** conspired with **HICKS** to acquire the

fake identifications and credit report information and the stolen credit cards that were used in

Martinsburg, WV and Leesburg, VA.  The goods purchased in West Virginia and Virginia were

then transported back to Maryland for personal use or for sale.

### December 2, 2013

49.     At approximately 11:44 am, **HICKS** called **OVIENRIAKHI** and told him that he's "…
bringing those two … today …" *(Call C1234)*.  Your Affiant believes, based on intercepts, that
**HICKS** was bringing **OVIENRIAKHI** two more identities and credit reports.

50.     At approximately 3:33 pm, **HICKS** called **OVIENRIAKHI** and they arranged to meet in
Baltimore County *(Call C1332)*.  At approximately 5:28 pm, **OVIENRIAKHI** called **HICKS**
and told him that he was passing exit 17 and would be there in 5 minutes *(Call C1410)*.  Your
Affiant knows that exit 17 on Interstate 695 is Security Blvd. on the west side.  At approximately
6:34 pm, **HICKS** called **OVIENRIAKHI** *(Call C1446)*.  During this call, **OVIENRIAKHI** told
**HICKS** that there is "… no paperwork …."  **HICKS** asked **OVIENRIAKHI** "… for those two?
… when I get back to the house, I'll call you …."  Your Affiant believes, based on training and
experience, that **OVIENRIAKHI** and **HICKS** met at some point between calls *C1410* and
*C1446*.  It is believed that **HICKS** forgot to give **OVIENRIAKHI** all the information needed,
and that was what **OVIENRIAKHI** was referring to when he said "paperwork".

51.     At approximately 7:37 pm, surveillance of 9104 Marlove Oaks, showed a dark colored
SUV arriving to the residence.

52.     At approximately 7:48 pm, **HICKS** called **OVIENRIAKHI** and asked "… what's the
names on that?"  **OVIENRIAKHI** told **HICKS** "… Evans is the last name … and Ray …."
**HICKS** replied "… I got it right here … I left it next to my …" *(Call C1489)*.  Your Affiant
believes this call is in reference to call *C1446* and **HICKS** having to go get additional
information from his house to give to **OVIENRIAKHI**.  Surveillance showed a dark SUV



arriving at **HICKS'** residence at 7:37 pm.  Shortly after, 7:48 pm, **HICKS** called

**OVIENRIAKHI** and asked for two names.  Your Affiant believes that **HICKS** was getting

credit report information for two victims, last names Evans and Ray, to give to

**OVIENRIAKHI.**

53.    At approximately 9:05 pm, surveillance of 9104 Marlove Oaks observed an individual

come from the area of the residence and get in to the dark colored SUV and depart.

54.    At approximately 9:13 pm, **HICKS** called **OVIENRIAKHI** and they agreed to meet in

20 minutes at the "spot" *(Call C1502).*  At approximately 9:52 pm, **OVIENRIAKHI** called

**HICKS** and told him he was there, **HICKS** told **OVIENRIAKHI** the he would "… be there in

five minutes …" *(Call C1530).*  At approximately 10:22 pm, **OVIENRIAKHI** called **HICKS,**

who told **OVIENRIAKHI** he would be there in two minutes *(Call C1533).*  At approximately

10:31 pm, the dark colored SUV was observed returning to 9104 Marlove Oaks Ln.  Cell tower

locational data for call *C1533* showed **Target Telephone #3** in the area of Rolling Rd. and

Liberty, Windsor Mill, which is approximately 3 miles from 9104 Marlove Oaks Ln.  Your

Affiant believes, based on training and experience, that **OVIENRIAKHI** and **HICKS** met

shortly after call *C1533*, at around 10:24 pm, and that **HICKS** then drove directly home, arriving

at approximately 10:31 pm.

55.    On December 2, 2013, the Maryland State Department of Assessments and Taxation

(SDAT) provided a Wage History Inquiry for **MOSES**, Social Security number 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.

SDAT could find no reported wages for that Social Security number.

56.    On December 2, 2013, HSI Agents conducted surveillance on **OVIENRIAKHI** and

observed him enter 2731 Wilkens Ave., Baltimore, MD.



## December 4, 2013

57.     At approximately 10:41 am, **OVIENRIAKHI** called **RINALDI** *(Call C1791)*.  During

this call, **RINALDI** told **OVIENRIAKHI** that "… it declined … I did exactly what you said and

it said no …."  Your Affiant believes, based on intercepts, that **OVIENRIAKHI** had enlisted the

help of **RINALDI** to use the stolen credit cards.

58.     At approximately 10:59 am, **OVIENRIAKHI** called **MOSES** *(Call C1800)*.  **MOSES**

told **OVIENRIAKHI** "… here I come …."  Your Affiant believes, based on training and

experience, that **OVIENRIAKHI** was picking **MOSES** up at an unknown location.

59.     At approximately 12:30 pm, **OVIENRIAKHI** received an incoming call from an

unidentified male (UM3332), using telephone number (443) 983-3332 *(Call C1808)*.  During this

call, UM3332 told **OVIENRIAKHI** the "… it didn't work … I swiped it myself …."  Your

Affiant believes, based on intercepts, that **OVIENRIAKHI** had enlisted the help of UM3332 to

use the stolen credit cards.

60.     Cell tower locational data for calls *C1800* to *C1843*, shows that **Target Telephone #3**

traveled north on Interstate 95 to the area of the Christiana Mall in Christiana, Delaware.  Cell

tower locational data for calls *C1845* to *C1873* showed **Target Telephone #3** traveling to the

area of the outlet stores in Lancaster, PA.  Cell tower locational data then showed **Target

Telephone #3** returning to Baltimore, MD.

61.     At approximately 6:27 pm, **RINALDI** called **OVIENRIAKHI** *(Call C1874)*.  During

this call, **OVIENRIAKHI** told **RINALDI** that Shanika's telephone number was 939-6706.

Your Affiant believes this to be Shanika BOOKER, and according to commercial databases,

(443) 939-6706 is subscribed to Promise Auto Deal.

Cfn
12.17-13

62.     At approximately 9:10 pm, **OVIENRIAKHI** called Kofi LNU and told him that he has

"… a computer that cost $700 … you can buy for $400 …" *(Call C1896)*.  Your Affiant

believes, based on training and experience, that **OVIENRIAKHI** was attempting to sell a

computer fraudulently obtained with stolen credit information or stolen credit cards supplied by

**HICKS**.

63.     At approximately 9:43 pm, **THOMAS** called **OVIENRIAKHI** *(Call C1902)*.  During

this call, **OVIENRIAKHI** told **THOMAS** that he has "… iPad … laptop that cost … $700 …

it's a … HP … I'm just getting in to town …."  **THOMAS** asked **OVIENRIAKHI** how much

he wanted for the laptop and the iPad, **OVIENRIAKHI** said "4" for the laptop.  Your Affiant

believes, based on training and experience, that **OVIENRIAKHI** was attempting to sell

electronics fraudulently obtained with stolen credit information or stolen credit cards supplied by

**HICKS**.

64.     Your Affiant believes, based on the totality of the intercepts on December 2, 2013 and

December 4, 2013, and the corresponding cell tower locational date for **Target Telephone #3**,

that **OVIENRIAKHI** and **MOSES** conspired with **HICKS** to acquire the fake identifications

and credit report information and the stolen credit cards that were used in Christiana, DE and

Lancaster, PA.  The goods purchased in Delaware and Pennsylvania were then transported back

to Maryland for personal use or for sale.

65.     On December 4, 2013, your Affiant conducted surveillance on 208 N. Monroe St., and

observed the red Toyota Camry parked in the vicinity and a U-Haul rental truck park around the

corner on W. Lexington St.  Your Affiant believes, based on intercepts, that the U-Haul was

obtained by **OVIENRIAKHI** for the purpose of moving.



## Additional Information

66.     On December 3, 2013, at approximately 7:29 pm, **OVIENRIAKHI** called Femi LNU,

using (410) 340-0994 *(Call C1732)*. During this call, **OVIENRIAKHI** told Femi that he needed

help moving appliances in to the Wilkens house. At approximately 8:36 pm, **OVIENRIAKHI**

received a call from Mark LNU, user of (443) 468-8200 *(Call C1743)*. During this call,

**OVIENRIAKHI** asked Mark to help him move.

67.     Cell tower locational data for the nights of December 3, 2013 to December 11, 2013, has

shown **Target Telephone #3** located in the vicinity of 208 N. Monroe St. for the overnight

periods.

68.     Your Affiant believes, based on intercepts and surveillance, that **OVIENRIAKHI** is in

the process of moving, however has not completed the move and therefore maintains residence at

both addresses.

69.     On December 9, 2013, HSI Agent conducted surveillance at 2731 Wilkens Ave.,

Baltimore, MD and observed **OVIENRIAKHI** and **RINALDI** standing in front of the residence.

70.     On December 11, 2013, your Affiant queried the Maryland SDAT Real Property records

and found that Shanika BOOKER and Kevin OSAS are the owners of 2731 Wilkens Ave.,

Baltimore, MD, 21223 and 1616 Braddish Ave., Baltimore, MD 21216. Your Affiant knows

through this investigation that **OVIENRIAKHI** has referred to Shanika BOOKER as his wife.

Your Affiant believes, based on training, knowledge, and experience, that Kevin Osas is a

fictitious name used by **OVIENRIAKHI** to purchase the residence at 2731 Wilkens Ave. Your

Affiant knows, through internet research, that Osas is a company that produces business checks

that are widely available on the open market. Your Affiant further knows that **OVIENRIAKHI**

has previously used false names to open telephone accounts, often with the first name "Kevin".

Your Affiant believes, based on training, experience, and intercepts, that **OVIENRIAKHI** uses

the Osas business checks and this was the motivation for using Osas as the last name.

71.     On December 11, 2013, your Affiant queried the Maryland SDAT Real Property records

for 208 N. Monroe St., and found that it is owned by Baltimore Rising, LLC.  Intercepts have

indicated that **OVIENRIAKHI** rents this residence.

72.     On December 11, 2013, your Affiant queried the Maryland SDAT Real Property records

for 9104 Marlove Oaks Ln., and found that it is owned by Powers Homes at McDonogh Chase

LLC.  This is believed to be a rental, occupied by **HICKS**.

73.     On December 6, 2013, your Affiant made contact with the BCPD regarding **HICKS**.

Your Affiant learned that the following surveillances had been done on **HICKS** at 9104 Marlove

Oaks Lane:  On October 21, 2013, BCPD Detectives conducted surveillance on **HICKS** and

positively identified him arriving to and parking in front of 9104 Marlove Oaks Ln.  On October

29, 2013, BCPD Detectives positively identified **HICKS** returning to and entering 9104 Marlove

Oaks Ln.  On November 13, 2013, BCPD Detectives observed a Mitsubishi bearing Maryland

license plate number 5BA8206, parked in front of 9104 Marlove Oaks Ln.  On November 27,

2013, BCPD Detectives observed **HICKS** exit the residence and depart the area in the

Mitsubishi bearing Maryland license plate number 5BA8206.

74.     Your Affiant submits, based on the articulated facts, that there is probable cause to

believe **OVIENRIAKHI**, **MOSES**, **HICKS**, and **THOMAS**, as well as multiple unidentified

co-conspirators are conspiring to:  manufacture, distribute, and possess fake identifications in

violation of violations of 18 U.S.C. § 1028A (Aggravated Identify Theft); possess and distribute

stolen credit cards in violation of 18 U.S.C. § 1029 (Access Device Fraud and Theft); and,

manufacture, distribute, and possess fake checks in violation of 18 US.C. § 1344 (Bank Fraud).

Your Affiant believes, based on the facts set forth above, that there is probable cause to believe

that fruits, evidence, and instrumentalities as set forth in Attachment B will be discovered in the

residences and vehicles further described in Attachment A.


Special Agent Douglas Rechtin,
Homeland Security Investigations

Signed and sworn to me this __17__ day of December 2013.

Susan K. Gauvey
United States Magistrate Judge

13-2981 **SKG**            13-2986 **SKG**

## Attachment A

1. 208 North Monroe St., Baltimore, MD, 21223: a two-story row home residence with a basement. The structure is made of multi-colored stone with eight windows on the front. The front entrance has steps ascending from the sidewalk and has a black steel security door. Inside door is white with an oval shaped window in the middle. The front entrance has a window above it. In the middle of that window is the number "208" in black with a gold background. The numbers appear to be stickers. To the right of the front door is a small, black mailbox.

2. 2731 Wilkins Ave., Baltimore, MD, 21223: a two-story end unit town home residence with a light colored brick foundation, concrete or light colored stucco first floor and a red brick second floor and a separate small red brick structure located on the premises to the rear of the main structure. There are three windows on the front of the house. The front entrance is white with a half-circle window at the top. To the left of the front entrance is a small black mail box. The street numbers for this residence are not posted. To the right of the entrance is the corner of the residence and the end of the row with wooden steps ascending to the second story. An alley or street forms the border on the right side of the residence.

3. 1901 Frederick Avenue, Baltimore, MD 21223: a one-story commercial structure at the corner of W. Frederick Ave. and Monroe St. The building is white brick with a blue façade at roof level. The front entrance of the building face Frederick Ave. and the access to the property is off of Frederick Ave. There is a chain link fence surrounding the property, with a white sign with blue print hanging on the northeast corner, facing Frederick Ave. Printed on the sign is **"Promise Auto Deal and Rental** Inc. 410-945-1400". Several cars are parked inside the fence on the car lot.

4. 9104 Marlove Oaks, Owings Mills, MD, 21117: a three story middle unit townhouse. The residence has a one-car garage, with a white garage door, on the bottom floor. To the left of the garage is the front entrance with vertical windows to the right of the door. Above the entrance are the numbers "9104" in gold. The front of the residence is stone and siding with four windows on the front.

5. Red Toyota Camry, Maryland license plate number 8BD9377, registered to Shanika BOOKER.

6. a dark colored Mitsubishi Outlander, Maryland license plate number 5BA8206.

32